UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FCA US, LLC,

        Plaintiff,        Case No. 24-11165

v.        Judith E. Levy
        United States District Judge

MacLean-Fogg Component
Solutions LLC, *et al.*,        Mag. Judge David R. Grand

        Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS [13] AND GRANTING DEFENDANTS' MOTION TO DISMISS [5]**

Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 5), and Defendants' motion to stay the proceedings. (ECF No. 13.) On August 8, 2024, the Court held a hearing and heard oral argument on Defendants' motion to dismiss.

For the reasons set forth below, Defendants' motion to stay proceedings is denied, Defendants' motion to dismiss is granted, and Plaintiff's request for leave to amend the complaint is granted.

## I. Background

Defendants MacLean-Fogg Component Solutions LLC and Metroform LLC are Tier I suppliers to Plaintiff FCA US LLC. (ECF No. 1-2, PageID.12.) Defendants are the sole suppliers of 24 different transmission components ("the Parts") to Plaintiff. (*Id.* at PageID.13.)

The parties' transaction is governed by FCA's Production and Mopar Purchasing General Terms and Conditions (ECF No. 1-3, PageID.95–120) and the Purchase Orders for the Parts. (*Id.* at PageID.23–94; ECF No. 1-2, PageID.12–13.) The Purchase Orders incorporate the Terms; together, they are collectively referred to as the "Agreement." (*Id.* at PageID.13.) The Agreement states that FCA will purchase Parts from Defendants. Specifically, the quantity of Parts to be purchased is "approximately 65%-100% of [FCA's] requirements." (ECF No. 5, PageID.614; ECF No. 8, PageID.644; ECF No. 1-3, PageID.25.)

On March 5, 2024, Defendants notified Plaintiff that they would stop shipping Parts on March 19, 2024, unless Plaintiff agreed to a 26% price increase, retroactive to January 1, 2024, and going forward. (ECF No. 1-2, PageID.14.) The parties could not resolve the disagreement and Defendants stopped their shipments. (*Id.*) As a result, Plaintiff's Kokomo,

2

Indiana plant shut down around March 25, 2024, causing millions in damages. (*Id.*) Defendants allegedly refused to ship Parts until Plaintiff paid an additional $1.4 million, which Plaintiff did, and allegedly threatened to stop shipping Parts after April 12, 2024, unless Plaintiff paid "millions more." (*Id.*)

Plaintiff filed this suit in Oakland County Circuit Court on April 10, 2024, with a motion for an emergency temporary restraining order and preliminary injunction. (ECF No. 1-12, PageID.590–591.) The state court denied the motion for an emergency temporary restraining order on April 11, 2024 (ECF No. 1-6), and denied the motion for preliminary injunction on April 23, 2024. (ECF No. 1-11.) After the Oakland County Circuit Court denied its motion for a temporary restraining order, Plaintiff began paying the higher price for the Parts under protest and Defendants restarted shipments of Parts. (*Id.* at PageID.573.) Defendants then filed a notice of removal for this case on May 1, 2024. (ECF No. 1.)

## II. Defendants' Motion to Stay Proceedings (ECF No. 13)

Defendants request that the Court enter an order staying the proceedings "until the *FCA US, LLC v. Kamax Inc.* matter pending in the

3

Michigan state courts (Oakland County Circuit Court No. 2024-205863-CB; COA No. 371234; MSC No. 167641) is concluded." (ECF No. 13, PageID.740.) As stated by Defendants,

> the *Kamax* appeal ruling will likely have a dispositive effect on this case, a stay will conserve judicial resources, consistency in judicial opinions between and among the various courts serves the public welfare, and there is no hardship to the parties in avoiding litigation and appeal costs in this case, especially since FCA is a party to the Kamax matter.

(*Id.*)

The Court has the inherent power to grant a stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255). According to Defendants, a court, when determining a motion for a stay, weighs "[1] the potential dispositive effect of the other case, [2] judicial economy achieved by awaiting adjudication of the other case, [3] the public welfare, and [4] the relative hardships to the parties created by withholding judgment." (ECF No. 13, PageID.742–743 (quoting *Caspar v. Snyder*, 77 F. Supp. 3d 616, 644 (E.D. Mich. 2015)).)

4

While the *Kamax* decision will likely have a dispositive effect on this case, the Court declines to grant Defendants' motion for a stay. First, resolution of the *Kamax* case will take time. Oral argument has not yet been scheduled by the Michigan Court of Appeals, and as noted by Plaintiff, the Court of Appeals' decision "will almost certainly be appealed to the Michigan Supreme Court," further extending the resolution of *Kamax*. (ECF No. 15, PageID.750; *see also id.* ("All in all, it could take another 1-2 years for *Kamax* to work its way through the Michigan appellate courts.").)

Second, a stay of this length would prejudice Plaintiff. As stated by Plaintiff, it has paid Defendants "approximately $3.9 million under protest, and . . . is continuing to pay Defendants approximately $100,000 each week under protest" pending this litigation. (*Id.* at PageID.749–750.) A stay of potentially years would place an undue burden on Plaintiff, forcing it to continue pay money it challenges in this case, while waiting for resolution of another, unrelated case.[1]

---

[1] The Court also notes that Plaintiff originally filed its case in state court, but Defendants removed the case to federal court. (ECF No. 1.) If Defendants wished for this case to be resolved through the Michigan state-court system, they had the option to remain in state court and let state-court proceedings continue.

5

As such, the Court finds that the prejudice to Plaintiff outweighs the benefits of a stay. Defendants' motion for a stay is denied.[2]

## III. Defendants' Motion to Dismiss (ECF No. 5.)

Defendants also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5.) Defendants contend that Plaintiff's suit for breach of contract fails to state a claim because the contract contains no obligation to continue deliveries of Parts at the old

---

[2] Defendants in its motion to dismiss also suggest that the Court should certify this issue to the Michigan Supreme Court. (ECF No. 5, PageID.627 n.4.) It is within the district court's discretion to certify a question to a state court. *Lehman Bros v. Schein*, 416 U.S. 386, 391 (1974). Local Rule 83.40 states that an order of certification must include findings that "(1) the issue certified is an unsettled issue of State law, and (2) the issue certified will likely control the outcome of the federal suit, and (3) certification of the issue will not cause undue delay or prejudice."

This question is not suitable for certification to the Michigan Supreme Court. While Defendants rightfully believe this issue is important, certification should not cause undue delay or prejudice. *See* Local Rule 83.40. Plaintiff argues that certification is inappropriate because this case was originally in state court and was removed by Defendants. (ECF No. 8, PageID.662 n.15.) "If Defendants wanted a ruling from the Michigan Supreme Court, they should have remained in the State Court after it held that FCA was likely to succeed on the merits of its claims and let the case play out through the Michigan court system, rather than removing the case to this Court [and] shopping for a different outcome." (*Id.*) This reasoning is persuasive. Additionally, the Court already found that a stay would place an undue burden on Plaintiff. Certifying this question to the Michigan Supreme Court would also unduly prejudice Plaintiff. As such, Defendants' request for certification to the Michigan Supreme Court is denied.

price; thus, Defendants are "breaching nothing, and FCA's claims fail." (*Id.* at PageID.610.)

### A. Legal Standard

When deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

B.  Analysis

As an initial matter, the Court must determine what law governs the merits of this dispute. In diversity actions, courts use state law to determine the meaning and validity of contract agreements. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007). "When interpreting contracts in a diversity action, we generally enforce the parties' contractual choice of forum and governing law." *Id.*

The Court has diversity jurisdiction over this case. (ECF No. 1, PageID.5.) Under the terms of the Agreement,[3] the dispute is governed by the laws of Michigan. (ECF No. 1-3, PageID.112.) Neither party disputes that Michigan state law applies here. (*See* ECF Nos. 5, 8, 9.) As such, the Court will use Michigan law.

To survive a motion to dismiss for a breach of contract claim, Plaintiff must sufficiently plead that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., NA v. First Am. Title Ins. Co.*,

---

[3] The Agreement states, "[t]he Order and all transactions between FCA US and Seller will be governed by and construed in accordance with the laws of Michigan as if entirely performed therein." (ECF No. 1-3, PageID.112.)

8

499 Mich. 74, 100 (2016) (citing *Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161 (2014)). Pursuant to Michigan law, a contract for the sale of goods of at least $1,000 must have a quantity term. Mich. Comp. Laws § 440.2201(1). A court must "identify the 'quantity term' in the contract to determine whether the contract is enforceable." *MSSC, Inc. v. Airboss Flexible Prod. Co.*, 511 Mich. 176, 181 (2023), *as amended* (Sept. 22, 2023) ("[A] court can only enforce the contract up to the quantity set forth in writing.").

Here, the parties disagree on the nature of the Agreement. According to Plaintiff, the Agreement constitutes a binding, ongoing "requirements contract" that set a firm price for parts during the life of the program. (ECF No. 8, PageID.641, 643.) According to Defendants, the parties had a "release-by-release" agreement, which applied to each release issued by Plaintiff. (ECF No. 5, PageID.622.) Defendants argue that each release issued by Plaintiff was "an offer of a new fixed-quantity contract," which Defendants could reject at its discretion, because the Agreement lacked a quantity term. (*Id.* at PageID.622–623.) The parties' disagreement hinges on whether "approximately 65%-100% of FCA's

requirements" is a quantity term such that the parties have a requirements contract.

A requirements contract "is a contract that defines quantity by reference to the buyer's requirements." *Airboss*, 511 Mich. at 182. It is created by an "umbrella agreement" that dictates the terms of future transactions, including the quantity ("the buyer will obtain a set share of its total need from the seller," such as 100% of its needs). *Id*. at 183. The buyer will then issue releases to inform the seller of its specific, short-term needs. *Id*. In contrast, release-by-release agreements are agreements that generally "govern[] the terms of future contract offers." *Id*. at 184. "[T]he seller is bound by the terms agreed to in the purchase order when future releases are issued and accepted." *Id*. Release-by-release agreements are not, on their own, enforceable contracts. A requirements contract obligates the buyer to make purchases from the seller, while a release-by-release contract allows either party to discontinue the relationship after individual transactions are completed. *Id*. at 185. The key difference between a requirements contract and a release-by-release agreement is that a requirements contract contains a

10

suitable quantity term, while a release-by-release agreement's quantity term is supplied by each release.

The Michigan Court of Appeals has provided confusing, perhaps contradictory, guidance on what constitutes a suitable quantity term. In an unpublished opinion, *Acemco, Inc. v. Olympic Steel Lafayette, Inc.*, No. 256638, 2005 WL 2810716 (Mich. Ct. App. Oct. 27, 2005), the Michigan Court of Appeals held that the term, "quantities of the Products as the Buyer may specify in its purchase orders," is not a sufficient quantity term because it "grants complete discretion to the buyer" to require "any amount or no amount." *Id*. at *4. The *Acemco* court noted that this completely discretionary quantity term could result "in a countless number of possible quantities from zero to infinity." *Id*. However, in a published opinion, *Cadillac Rubber & Plastics, Inc. v. Tubular Metal Sys., LLC*, 331 Mich. App. 416 (2020), the Michigan Court of Appeals held that "a quantity between one part and 100% of Tubular's requirements" was a sufficient quantity term for a requirements contract. *Id*. at 430. The *Cadillac Rubber* court also reasoned that a requirements contract "need not be exclusive to be enforceable." *Id*.

11

The Michigan Supreme Court provided additional clarity in its 2023 decision, *MSSC, Inc. v. Airboss Flexible Prod. Co.*, 511 Mich. 176 (2023). It stated that, while a quantity term of "100% of the buyer's needs" is "typical" in requirements contracts, *id.* at 182–83, such an exact quantity term is not necessary. The Michigan Supreme Court specified that an "imprecise quantity in a requirements [] contract" is not fatal, and "parol evidence can be used to determine the specific total of [that] imprecise quantity." *Id.* at 195–96; see also *id.* at 193 ("A contract may leave the final or total quantity ambiguous or unspecified in a requirements contract, but it may not state an imprecise quantity term."). However, parol evidence cannot be used to *create* a quantity term. *Id.* at 194. The *Airboss* Court declined to address the "apparent inconsistency" between the *Acemco* and *Cadillac Rubber* holdings, *id.* at 194 n.4, but observed that "in *Cadillac Rubber*, the Court found the existence of a quantity term—'a quantity between one part and 100%'—which therefore allowed it to use evidence of past practice (or parol evidence) to discern the parties' intent." *Id.* at 194 (quoting *Cadillac Rubber*, 331 Mich. App. at 430–31).

Finally, the Sixth Circuit issued *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400 (6th Cir. 2024), on May 23, 2024. In *Higuchi*, the Sixth Circuit interpreted *Airboss* and its requisites for a quantity term in a requirements contract pursuant to Michigan's UCC. According to the Sixth Circuit, "[t]he quantity term, on its face and as written, must [] be clear and precise" and cannot be "ambiguous." *Id.* at 406. "[U]nlike other terms of a contract, a quantity term cannot be made clear through evidence beyond the written contract." *Id.* Instead, the underlying agreement must "clearly and precisely stablish the set share of [the] requirements that [the buyer] must purchase from [the seller]" in order for there to be an enforceable requirements contract. *Id.* at 408.

District courts sitting in diversity are required to apply the law of the forum state. As stated by the Sixth Circuit, if "the question at issue has not yet been resolved by the [state] Supreme Court, we must engage in the challenging task of attempting to predict what the [state] Supreme Court would do if confronted with the same issue." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003) (citing *Stalbosky v. Belew*, 205 F.3d 890, 893–94 (6th Cir. 2000)); *see also Higuchi*, 103 F.4th at 405. "[I]n the absence of any persuasive data that the Michigan

13

Supreme Court would decide" the issue differently, federal courts are "'not at liberty to depart from the state appellate court's resolution' of this issue of state law." *Hampton v. United States*, 191 F.3d 695, 701 (6th Cir. 1991) (quoting *Hicks v. Feiock*, 485 U.S. 624, 629 (1988)). *Airboss* did not overturn *Cadillac Rubber* and, in fact, referenced and discussed the existence of a quantity term in *Cadillac Rubber*. *Airboss*, 511 Mich. at 194. It therefore appears to be a reasonable, if not strong, likelihood that the Michigan Supreme Court would uphold *Cadillac Rubber*. Further, the Michigan Supreme Court's explicit statement that it is not overturning *Cadillac Rubber* means that *Cadillac Rubber*, a published case (unlike *Acemco*), is still precedent. *See also FCA US LLC v. Kamax, Inc.*, No. 24-205863-CB, 2024 Mich. Cir. LEXIS 649, at *12 (Oakland Cnty. Cir. Ct. May 17, 2024) (holding that "approximately 65%-100% of [buyer's] requirement" is a suitable quantity term because *Cadillac Rubber* was not explicitly overturned by *Airboss*); *FCA US LLC v. MacLean-Fogg Component Sols., LLC*, No. 24-206687-CB, 2024 Mich. Cir. LEXIS 648, at *21 (Oakland Cnty. Cir. Ct. Apr. 19, 2024).

However, the Court is not at liberty to depart from *Higuchi*. When the Sixth Circuit issues "a decision interpreting state law, that

14

interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)); *see also Heath v. C.R. Bard Inc.*, No. 3:19-CV-0803, 2021 WL 4554618, at *2 (M.D. Tenn. Oct. 5, 2021) (commenting that the Sixth Circuit in *Hampton v. United States*, 191 F.3d 695, 702–03 (6th Cir. 1999), departed from its earlier interpretation of Michigan law "based on intervening caselaw by [an] *intermediate* state appellate court")). Neither the Michigan Supreme Court nor the Michigan Court of Appeals have published an "intervening decision" on this issue since *Higuchi* was decided on May 23, 2024. The Court must therefore follow *Higuchi*'s interpretation of Michigan law.

Pursuant to *Higuchi*, "approximately 65%-100% of FCA's requirements" is not a suitable quantity term such that the parties have a requirements contract. The quantity term must "clearly and precisely establish the set share of its requirements that [the buyer] must purchase from [the seller]." *Higuchi*, 103 F.4th at 408; *see also id.* at 406 ("[A] contract's written quantity term cannot be ambiguous–it must be precise

15

and explicit."). A quantity term that is an approximation is not "clearly and precisely" established. *See Approximate,* Merriam-Webster, https://perma.cc/TBA5-6YHN (last visited Mar. 17, 2025) ("nearly correct or exact : close in value or amount but *not precise*") (emphasis added).

Plaintiff argues that "even if the quantity term is imprecise it may be explained or supplemented by parol evidence." (ECF No. 8, PageID.645; *see also id.* at PageID.661.) However, *Higuchi* explains that "a quantity term cannot be made clear through evidence beyond the written contract." *Higuchi*, 103 F.4th at 406.[4] The "approximate" quantity value here is ambiguous, and the Court cannot further evaluate it using parol evidence.

---

[4] Plaintiff suggests that the Court should disregard portions of *Higuchi* because *Higuchi*'s reading of *Airboss* is too "broad." (ECF No. 8, PageID.661.) While the Court acknowledges Plaintiff's reasonable point of view, the Court may not disregard the *Higuchi* opinion. Plaintiff's arguments that the facts in *Higuchi* are entirely different and the relevant sections of *Higuchi* are dicta are not convincing. (ECF No. 8, PageID.659–661; ECF No. 10, PageID.722.) While the terms in the *Higuchi* purchase order are different, the issue in both cases is the same: whether there is a suitable quantity term that satisfies the Michigan UCC. As such, the relevant portions of *Higuchi* are on point and cannot be disregarded as dicta.

## IV. Conclusion

For the reasons set forth above, Defendants' motion to stay proceedings (ECF No. 13) is DENIED, and Defendants' motion to dismiss (ECF No. 5) is GRANTED.

Further, Plaintiff requests leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). (ECF No. 8, PageID.662.) Rule 15(a)(2) states that if a party can no longer amend its pleading as a matter of course, it may amend its pleading "only with the opposing party's written consent or the court's leave." The Court GRANTS Plaintiff's request for leave to amend its complaint. Plaintiff must file its amended complaint within **30 days** of this order.

IT IS SO ORDERED.

Dated: March 20, 2025       s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
     United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 20, 2025.

     s/William Barkholz
     WILLIAM BARKHOLZ
     Case Manager